AO108(2/90) Application for Seizure Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

Two wooden boxes and their contents, claimed, in part, as $85,000 in U.S. currency by "Pablo Olaso" on October 3, 2006, located inside a vault within the Examining and Redemption Section of the Bureau of Engraving and Printing located at:
14th & C Streets, S.W.
Washington, D.C. 20228

**APPLICATION AND AFFIDAVIT FOR SEIZURE WARRANT**

CASE NUMBER:

I, _____Robert E. Moreno_____ being duly sworn depose and say:

I am a(n) __Special Agent with the U.S. Department of Homeland Security__ and have reason to believe that within the jurisdiction of this Court there is now certain property that is subject to forfeiture to the United States, namely (describe the property to be seized)

    Two wooden boxes and their contents, claimed, in part, as $85,000 in U.S. currency by "Pablo Olaso" on October 3, 2006, located inside a vault within the Examining and Redemption Section of the Bureau of Engraving and Printing

which are (state one or more bases for seizure under the United States Code)

    Property involved in, or traceable to a violation of 31 U.S.C. 5316, or a conspiracy to commit such a violation, or identical property found in the same place.

concerning violations of Title _31_ United States Code, Section _5316_, having regard to the provisions of Title _31_ United States Code, Section _5332(c)(1) and 5332(a)_.
The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.     ☒ YES    ☐ NO

Barry Wiegand
Asset Forfeiture Unit, Criminal Division
(202) 307-0299

Signature of Affiant
Robert E. Moreno, Special Agent
U.S. Department of Homeland Security

Sworn to before me, and subscribed in my presence

_____
Date

at Washington, D.C.

_____
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

I, Robert E. Moreno, a special agent of the U.S. Department of Homeland Security, first being duly sworn, do hereby depose, aver, and state:

### I. SUMMARY.

1.  I submit this affidavit as part of an application for a warrant to seize a specific item, consisting of two wooden boxes and their contents, which originally was claimed as $85,000 worth of U.S. currency, some of it showing signs of smoke or fire damage. At least $40,000 worth of the U.S. currency in these boxes consists of whole notes that are not mutilated and appear to have only smoke-related stains and discoloration. These two boxes of currency now are in the official possession of an agency of the U.S. federal government, and physically are located in Washington, D.C., being kept separate and distinct from any other item. Recent examination of the currency in the two boxes has shown it to be valued at $88,417.00, but I am applying for a warrant to seize all of the currency in the two boxes and any other contents, regardless of its precise amount or value.

2.  These boxes of currency may be seized because they are property subject to forfeiture to the U.S. government based on probable cause to believe that they were involved in a violation of the law requiring a written report to be made whenever a person transports more than $10,000 in U.S. currency to a place in the United States from a place outside this country. These boxes and their contents also may be seized as involved in a conspiracy to commit such a reporting-law violation, or because the boxes and currency inside them also are property traceable to this type of reporting violation or to a conspiracy to commit such a violation.

3.  In this instance, two persons brought these two boxes of U.S. currency from Uruguay to the United States at Virginia's Dulles airport on October 3, 2006, and failed to report that they had done so, which was required by U.S. law. These persons then brought the boxes of currency to an office in Washington, D.C., of the Bureau of Engraving and Printing (BEP) of the U.S. Department of the Treasury. The persons turned over the two boxes and their contents to the U.S. Treasury Department to take advantage of its program for the redemption of damaged or mutilated U.S. currency. The persons claimed the currency to be $85,000. Of the currency, at least $40,000 is unmutilated, and consists of plainly complete recognizable $100 notes, identifiable as such on sight. The persons who brought the boxes of U.S. currency into the United States on October 3, 2006, never filed a required report that they had transported more than $10,000 in U.S. currency into the United States. This failure makes the boxes and their contents forfeitable to the U.S.

government, and subject to seizure. Citations to the laws requiring the report and authorizing the seizure and forfeiture appear at the end of this affidavit.

## II. AFFIANT'S BACKGROUND

4.   I am a sworn federal law enforcement officer, holding a position as a Special Agent of the Department of Homeland Security (DHS), specifically the bureau of Immigration and Customs Enforcement (ICE). My official duties include investigating violations of federal laws governing the export and import of monetary instruments and the registration of money-transmitting businesses, as well as violations of federal laws that make it a crime to structure transactions to evade reporting requirements or to engage in bulk smuggling of cash into or out of the United States. Assigned to ICE's Office of the Special Agent in Charge for Washington, D.C., I currently am posted to the High-Intensity Drug Trafficking Task Force (HIDTA), which has offices in Annandale, Virginia. Because the purpose of this affidavit is to obtain a seizure warrant, I have not tried to set forth here all of the information known to law enforcement agents about the events described below. What I have set forth below, I know either from having observed it personally or read it in official documents, or from learning it through other sworn law enforcement agents.

## III. DESCRIPTION OF PROBABLE CAUSE

5.   On October 2, 2006, two persons left Uruguay by airplane to travel to the United States. Information supplied to the U.S. government, including what these persons themselves said or wrote, identifies them as Ms. Margarita Ines Olaso-Martins and Mr. Pablo Raul Olaso-Martins, reported to be wife and husband. These persons claimed Uruguayan residence and carried Uruguayan passports. The Olaso-Martins were passengers on United Airlines flight # 846, which arrived at Dulles International Airport in Virginia in the United States at about 7:30 a.m. on October 3, 2006.

6.   When presenting herself for entry to the United States at Dulles Airport on October 3, 2006, Ms. Margarita Ines Olaso-Martins completed and signed a Customs Declaration form. The U.S. government's Customs and Border Protection agency supplies this form, and it must be completed for a traveller to enter the U.S., such as the Olaso-Martins did at Dulles Airport on October 3, 2006. Only one such written Customs Declaration form is required from each family travelling together. The form that Ms. Olaso-Martins signed on October 3, 2006, was written in the Spanish language. Ms. Olaso-Martins's form stated that she was travelling with one family member.

I infer this to mean Mr. Pablo Raul Olaso-Martins, her apparent husband. The form required Ms. Olaso-Martins to state whether she or a family member were "carrying currency or monetary instruments over $10,000 U.S. . . . ." Ms. Olaso-Martins's signed form contains a check mark next to the answer "No".

7. At about 12:00 noon on October 3, 2006, two persons presented themselves at the offices of the U.S. Treasury Department's Bureau of Engraving and Printing (BEP) on 14th Street, S.W., Washington, D.C. The persons indicated that they wished to take part in BEP's program for redeeming damaged or mutilated U.S. currency. They identified themselves as Ms. Margarita Ines Olaso-Martins and Mr. Pablo Raul Olaso-Martins. The Olaso-Martins had with them two wooden boxes, which they eventually transferred to BEP employees for the currency redemption program. These boxes contained at least $40,000 in what I regard as obviously recognizable U.S. currency in $100 notes, as part of a total amount of U.S. currency for redemption, some of it damaged, burnt, or otherwise mutilated, which the Olaso-Martins claimed to be $85,000.

8. In seeking to take part in the currency redemption program, the Olaso-Martins met with two BEP "mutilated currency specialists" and indicated that they wished to redeem U.S. currency, which they said had been burned in Uruguay. Ms. Olaso-Martins translated into Spanish for Mr. Olaso-Martins what others at the meeting said in English. In the course of the meeting, the Olaso-Martins indicated that they originally had planned to send the currency in the wooden boxes to BEP through the American embassy in Uruguay, but then decided to bring it to the U.S. themselves. The Olaso-Martins asserted the currency in the wooden boxes had been damaged in a building fire.

9. The Olaso-Martins gave to the BEP officials the two wooden boxes containing the U.S. currency that they brought to the U.S. from Uruguay. The Olaso-Martins received a formal BEP "Receipt – Hand Deliveries of Currency" document, whose original copy bears a signature from one of the mutilated currency specialists. The form identifies "Pablo Olaso" as the claimant, states that "$85,000" was claimed, and gives a street address in Montivideo, Uruguay, and an e-mail address that includes the designation "MIOlaso," possibly referring to Margarita Ines Olaso. On a separate form entitled, "Statement of Conditions Regarding the Acceptance of Mutilated United States Currency for Redemption," there is a signature that looks the same as that on the Customs Declaration form associated with that morning's entry into the U.S. at Dulles Airport by Mrs.

Margarita Ines Olaso-Martins.

10. At various times between October 20, 2006, and January 31, 2007, a BEP Investigator, Richard Hattauer, has examined the currency in the boxes that the Olaso-Martins had left with BEP on October 3, 2006. BEP officials have indicated that the currency has a total value of $88,417, which is a bit more than the amount stated as claimed on the Olaso-Martins's BEP receipt of October 3, 2006. Inv. Hattauer found that the currency consisted almost entirely of U.S. $100 notes with a majority of the bills having sequential serial numbers. Of the $85,000 in currency that the Olaso-Martins claimed to have been carrying in the boxes they presented to BEP, more than $40,000 in $100 notes appeared to be whole, unburnt, and suffering only from smoke discoloration. Inv. Hattauer has reported that a BEP credit union executive has indicated that these notes of U.S. currency from the Olaso-Martins's boxes would be accepted at face value by a U.S. financial institution, for example, in Kansas City.

11. I have investigated whether the Olaso-Martins have filed any written report with the U.S. Government regarding the currency in the two wooden boxes, which they appear to have brought with them when they came to the U.S. from Uruguay on October 3, 2006. Leaving aside documents completed during the meeting between the Olaso-Martins and BEP officials on October 3, 2006, my investigation shows that no written report ever has been made to the U.S. government by one or the other of the Olaso-Martins stating that they transported two boxes containing more than $10,000 in U.S. currency into the U.S. from Uruguay on October 3, 2006. Nothing that the Olaso-Martins did at the BEP meeting on October 3, 2006, complied with the reporting requirements for importing more than $10,000 in U.S. currency into the U.S.

12. Based upon his training and experience, Inv. Hattauer has concluded that the Olaso-Martin-supplied currency differs from currency associated with cash collected and stored over time by law-abiding persons. In part, Inv. Hattauer reached his conclusion because the Olaso-Martins's currency consisted almost entirely of notes of the same $100 denomination, and these $100 notes had sequential serial numbers. In the Olaso-Martins-supplied currency, Inv. Hattauer also found burned pieces of paper with names, numbers, and markings similar to those on documents known as "owe sheets" that have been found during police investigations of illegal narcotic trafficking. "Owe sheets" are records that a person is in debt and owes money or has paid money against a debt.

13. At the time that I make this affidavit, the two boxes of Olaso-Martins's currency,

which they gave to the BEP on October 3, 2006, are now located inside a vault within the Examining and Redemption Section of the Bureau of Engraving and Printing, 14th & C Streets, S.W., Washington, D.C. 20228. I also understand that there are no other similar items in this place which might be seized by mistake under the warrant I seek. In addition, if this Court issues a warrant to seize this property, I personally shall execute it in the presence of BEP officers to ensure that the property identified in the warrant is the only property seized.

### IV. APPLICABLE STATUTES AND LAWS

14. The U.S. Code requires a report from a person who "transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time" to "a place in the United States from or through a place outside the United States . . . ." 31 U.S.C. §§ 5316(a). The code's definition of "monetary instruments" includes "United States coin and currency". 31 U.S.C. § 5312((a)(3)(A).

15. The U.S. Code also makes it a criminal offense when a person "with the intent to evade a currency reporting requirement under [31 U.S.C.] section 5316, knowingly conceals more than $10,000 in currency . . . in any conveyance, article of luggage, merchandise, or other container and transports . . . such currency . . . from a place outside the United States to a place within the United States . . . ." 31 U.S.C. § 5332(a)(1).

16. "Any property involved in a violation" of 31 U.S.C. § 5316, "property involved in a conspiracy to commit any such violation," and "property traceable to any such violation or conspiracy, may be seized and forfeited to the United States . . . ." 31 U.S.C. § 5317(c)(2). Similarly, 31 U.S.C. § 5332(c)(1) permits the seizure and forfeiture of any property involved, or traceable to, violations of, or a conspiracy to violate, the bulk cash smuggling statute, 31 U.S.C. § 5332(a).

17. The part of the U.S. Code of Federal Regulations governing this subject, 31 C.F.R. § 103.23, requires a "Report of International Transportation of Currency or Monetary Instruments Reports" or "CMIR." which is to be filed with the U.S. Customs and Border Protection, Department of Homeland Security. This report is designated "FinCEN Form 105" (previously designated as a CF-4790). My investigation shows that the Olaso-Martins have never filed this form in connection with their entry into the U.S. from Uruguay on October 3, 2006.

### IV. PRAYER FOR ISSUANCE OF SEARCH WARRANT:

18.     Based upon the information recounted in this affidavit, I respectfully submit that there is probable cause to believe the two boxes and their contents, including all U.S. currency in each, are subject to seizure and forfeiture because they are property that was involved in, or is traceable to, violations of 31 U.S.C. § 5316. Therefore, I respectfully request that a warrant issue to seize these two boxes and their contents, including any and all items in each box, whether currency, whatever its condition, or any other papers and documents.

FURTHER THAN THIS, affiant sayeth not.

_____
Roberto E. Moreno, affiant,
Special Agent, Immigration and Customs Enforcement (ICE)
U.S. Department of Homeland Security

\* \* \* \* \* \* \*

Subscribed to and sworn before me on this __FEB 06__ day of February 2007.

_____
UNITED STATES MAGISTRATE JUDGE
ALAN KAY
U.S. MAGISTRATE JUDGE

-6-